**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**David C. DECK, Traci M. Georgiadis,**
**John F. Georgiadis, Jr.,**
**Appellees.**

Superior Court of Pennsylvania.

Argued March 18, 2008.

Filed July 9, 2008.

---

Michelle H. Sibert, Asst. Dist. Atty., for Com., appellant.

Matthew R. Gover, Harrisburg, for Deck, appellee.

BEFORE: STEVENS, LALLY–GREEN, and FITZGERALD *, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, appeals from the trial court's order entered on April 23, 2007, granting the motion to preclude introduction of audio tapes filed by Appellee, David C. Deck ("Deck"). We affirm.

¶ 2 The relevant facts and procedural history may be summarized as follows. In July of 2006, Deck resided with his girl-friend and her minor daughter, C.P. C.P. sought to prove to her mother and the police that Deck was engaging in sexual relations with her. C.P. knew that the police used recording devices to monitor conversations, based on her participation in a previous police investigation. On July 6, 2006, C.P. telephoned Deck at his place of work. Deck was in his office with the door open when he took C.P.'s call. At the start of their conversation, C.P. told Deck that she had placed him on the speaker-phone. Without Deck's knowledge or consent, C.P. recorded the conversation on a cassette tape in an answering machine.

Later in the day, C.P. went to the Fair-view Township Police Department and gave the tape of the telephone conversation to Officer Tyson Baker.

¶ 3 On September 1, 2006, at Criminal Action No. CP–21–CR–0001907–2006, Deck was charged with statutory sexual assault, involuntary deviate sexual inter-course, aggravated indecent assault, inde-cent assault, and sexual abuse of children. 18 Pa.C.S.A. §§ 3122.1, 3123(a)(7), 3125, 3126(a)(8), 6312, 306.[1]

¶ 4 On December 20, 2006, Deck filed a motion to preclude introduction of the au-dio tape. Deck asserted that the tape recording of his telephone conversation with C.P. was inadmissible at any proceed-ing against him because it was made in violation of the Wiretapping and Electron-ic Surveillance Control Act ("Wiretap Act" or "Act"), 18 Pa.C.S.A. § 5701 et seq.

¶ 5 Following a hearing, on April 23, 2007, the trial court granted Deck's motion and suppressed the tape recording. The trial court determined that the telephone conversation between Deck and C.P. was a wire communication under Section 5702 of the Wiretap Act, and that as such, it was protected from interception under Section 5703. See 18 Pa.C.S.A. §§ 5702, 5703. The trial court also determined that the exception in Section 5704(4), which allows for the interception of wire communica-tions where all the parties to the recording have consented, did not apply because Deck's prior consent was not obtained. See 18 Pa.C.S.A. § 5704(4). Further, the trial court declined the Commonwealth's request to extend other exceptions set

---

* Former Justice specially assigned to the Supe-rior Court.

1. On September 1, 2006, the Commonwealth also charged John F. Georgiadis, Jr. and Traci M. Georgiadis with engaging in involuntary deviate sexual intercourse with C.P. at Crimi-nal Action No. CP–21–CR–0001908–2006 and Criminal Action No. CP–21–CR–0001913–2006, respectively. On September 1, 2006, the Commonwealth filed a notice of trial join-der, notifying the parties that it intends to try these two cases and Deck's case together.

forth in Section 5704 to the circumstances of this case. This appeal followed.[2]

¶ 6 The Commonwealth raises the following issue:

1. Did the trial court err in suppressing an audio tape of a telephone conversation between the 40 year-old defendant and the 15 year-old victim where, the defendant did not have an expectation of privacy which society is willing to recognize as reasonable?

Commonwealth's Brief at 4.

¶ 7 In reviewing the grant of a motion to suppress, we are guided by the following standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of facts bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Scott*, 916 A.2d 695, 696 (Pa.Super.2007) (quotation omitted). Further, the construction of a statute raises a question of law. On questions of law, our standard of review is de novo, and our scope of review is plenary. *Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042, 1052 (2003).

¶ 8 In this appeal, the trial court's decision to suppress the recording of Deck's telephone conversation with C.P. was premised on the court's construction and application of the Wiretap Act's provisions. Therefore, our review is guided by the rules set forth in the Statutory Construction Act of 1972 ("SCA"). 1 Pa.C.S.A. § 1501 *et seq.* The SCA instructs that "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Further, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). When, however, the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering other matters. 1 Pa.C.S.A. § 1921(c).

¶ 9 Under the SCA, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S.A. § 1903(a). If the General Assembly defines words that are used in a statute, those definitions are binding. *Commonwealth v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989). A court may presume that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922(2). Thus, when construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Commonwealth v.*

---

**2.** In its notice of appeal, the Commonwealth certified that the trial court's order will terminate or substantially handicap Deck's prosecution. The Commonwealth's appeal, although interlocutory, was properly taken under Pa.R.A.P. 311(d).

On May 23, 2007, the trial court ordered the Commonwealth to file a Pa.R.A.P.1925(b) statement within 14 days. The Commonwealth complied, filing a Rule 1925(b) statement on May 29, 2007. The trial court filed a Rule 1925(a) opinion on June 19, 2007.

*Mayhue*, 536 Pa. 271, 639 A.2d 421, 439 (1994).

¶ 10 Our review is also guided by certain pronouncements the Supreme Court has made regarding the Wiretap Act's construction. Specifically, the Court has instructed that because the Act focuses on the protection of privacy, its provisions must be construed strictly. *Commonwealth v. Spangler*, 570 Pa. 226, 809 A.2d 234, 237 (2002). In addition, the Court has emphasized that the Wiretap Act is modeled on Title III ("Title III") of the Omnibus Crime Control and Safe Streets Act of 1968. Title III authorizes states to adopt wiretap statutes that trigger greater, but not lesser, protection than that available under federal law. *Id.* at 237, *citing* 18 U.S.C. § 2516(2) and *Commonwealth v. Birdseye*, 543 Pa. 251, 670 A.2d 1124, 1126 (1996).

¶ 11 With these principles in mind, we begin with the Wiretap Act's framework. As a general rule, in Section 5703, the Act prohibits the interception, disclosure or use of any wire, electronic or oral communication. 18 Pa.C.S.A. § 5703. In Section 5704, however, the Act sets forth several exceptions to Section 5703's prohibitions and allows for the interception of a wire, electronic or oral communication in designated circumstances. 18 Pa.C.S.A. § 5704. In Section 5721.1, the Act provides a statutory exclusionary rule that authorizes the suppression of interceptions that were not carried out in compliance with Section 5704's exceptions. 18 Pa. C.S.A. § 5721.1(b); *Commonwealth v. Spangler*, 809 A.2d at 238 & n. 7.

¶ 12 Turning to the Wiretap Act's specific terms, we start with Section 5703, which states:

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

(2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

(3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S.A. § 5703.

¶ 13 The Act's definitions for "intercept," "oral communication," "wire communication," and "aural transfer" are as follows:

As used in this chapter, the following words and phrases shall have the meanings given to them in this section unless the context clearly indicates otherwise:

\* \* \*

**"Intercept."** Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers.

**"Oral communication."** Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

\* \* \*

"**Wire communication.**" Any aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier. The term includes any electronic storage of such communication.

\* \* \*

"**Aural transfer.**" A transfer containing the human voice at any point between and including the point of origin and the point of reception.

18 Pa.C.S.A. § 5702.

¶ 14 One of the exceptions in Section 5704 to Section 5703's prohibitions states in relevant part that "[i]t shall not be unlawful and no prior court approval shall be required under this chapter for ... a person to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa.C.S.A. § 5704(4).

¶ 15 Presently, the Commonwealth does not dispute that the telephone conversation between C.P. and Deck is a wire communication under Section 5702 of the Wiretap Act[3] or that Section 5703 prohibits the interception of wire communications. 18 Pa.C.S.A. §§ 5702, 5703. Nevertheless, the Commonwealth argues that the telephone conversation recording should not be suppressed because Deck

had no reasonable expectation that his telephone conversation with C.P. was private. In other words, the Commonwealth contends that Section 5703 does not protect a telephone conversation from interception merely because it constitutes a wire communication under Section 5702. According to the Commonwealth, for a telephone conversation to be protected under Section 5703, it must **also** be an oral communication under Section 5702, *i.e.*, made by a person who possessed an expectation that the conversation was private and not subject to interception. *Id.*

¶ 16 Based on the definitions in and language of the Wiretap Act, we disagree. Section 5702 clearly and explicitly differentiates between oral communications and wire communications, giving a distinct definition for each. 18 Pa.C.S.A. § 5702. Section 5702's definition of wire communication does not include an expectation of privacy on the part of the speaker, as does its definition of oral communication. *Id.* Section 5703 is written in the disjunctive, and protects "wire, electronic **or** oral communications" from interception, disclosure or use. 18 Pa.C.S.A. § 5703 (emphasis added). *See In re Paulmier*, 594 Pa. 433, 937 A.2d 364, 372 (2007) (recognizing that the word "or" when used in a statute is disjunctive, used to connect alternative words or phrases). Section 5703 does not state that a wire communication must also be an oral communication to be protected. *Id.*

¶ 17 Moreover, we remain mindful of our Supreme Court's admonition in *Spangler* that the Wiretap Act is modeled on Title III and that the Wiretap Act may not grant less protection than that available under the federal statute. Accordingly,

---

**3.** In *Commonwealth v. DeBlase*, 357 Pa.Super. 71, 515 A.2d 564, 566 (1986), *appeal dismissed as improvidently granted*, 517 Pa. 323, 536 A.2d 339 (1988), this Court concluded

that wire communications as defined in Section 5702 of the Wiretap Act include telephone conversations.

we observe that the language of the definitions of wire communication and oral communication in the Wiretap Act and those in Title III are virtually identical,[4] and that the federal courts have held that telephone conversations are wire communications which, unlike oral communications, are protected against interception without regard to the speaker's expectation of privacy. *See, e.g., Briggs v. American Air Filter Co., Inc.,* 630 F.2d 414, 417 & n. 4 (5th Cir.1980).

■ ¶18 In light of *Spangler* and the discussion above, we conclude that Section 5703 of the Wiretap Act prohibits the interception, disclosure or use of a telephone conversation as a wire communication under Section 5702, even if the telephone conversation is not also an oral communication under Section 5702. 18 Pa.C.S.A. §§ 5702, 5703. This, in turn, leads us to conclude that Section 5703 prohibited the interception, disclosure or use of the telephone conversation between C.P. and Deck. *Id.* Deck's expectation of privacy is irrelevant.

¶19 The Commonwealth's remaining arguments are unavailing. First, the Commonwealth contends that Deck's consent was not required under Section 5704(4) of the Act for the recording of the telephone conversation to be lawful and, therefore, admissible. Again we disagree. The trial court's decision to suppress is compelled by the terms of Section 5704(4) itself,

which clearly state that it is not unlawful to intercept a wire communication "where all parties to the communication have given prior consent to such interception." 18 Pa.C.S.A. § 5704(4) (emphasis added).

■ ¶20 Next, the Commonwealth argues that this Court should create an exception in the Wiretap Act for a teenage assault victim who was trying to convince the authorities of her truthfulness. We cannot do so. This Court, like the trial court, does not have the authority to ignore clear statutory language, even in pursuit of a statute's spirit, or to add exceptions to statutory rules that the General Assembly has chosen not to include in an enactment. *See* 1 Pa.C.S.A. § 1921(b); *Lewis v. Erie Ins. Exchange,* 753 A.2d 839, 850 (Pa.Super.2000) ("Our duty to interpret statutes does not include the right to add provisions that the legislature has omitted.")

■ ¶21 Last, the Commonwealth claims that the recording is admissible under the inevitable discovery doctrine at common law or under Section 5721.1(c)(6), which states that evidence will not be excludable "if the Commonwealth or the respondent had a basis independent of the excluded communication for discovering such evidence, or that such evidence would have been inevitably discovered by the Commonwealth or the respondent absent the excluded communication." 18 Pa. C.S.A. § 5721.1(c)(6). *See Commonwealth*

---

4. Title III defines "wire communication" and "oral communication" as follows:

As used in this chapter—
(1) "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;
(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication[.]
18 U.S.C. § 2510(1), (2).

*v. Ingram,* 814 A.2d 264, 272 (Pa.Super.2002) (explaining that the inevitable discovery doctrine provides that evidence is admissible if it would be discovered through means that are sufficiently purged of the original illegality). The Commonwealth did not, however, raise the admissibility of the recording under the inevitable discovery doctrine or Section 5721.1(c)(6), in its Rule 1925(b) statement. Therefore, under Rule 1925(b), this issue is waived. Pa.R.A.P.1925(b); *Klos v. Klos,* 934 A.2d 724, 732 (Pa.Super.2007) ("[Appellant's] first and second issues do not appear in his Pa.R.A.P.1925(b) statement, and, as such, these issues are waived due to his failure to comply strictly with Pa.R.A.P.1925(b).").

¶ 22 Accordingly, we conclude that the trial court's decision to grant Deck's motion to suppress the tape recording was correct. Accordingly, we affirm.

¶ 23 Order affirmed.